UNITED STATES v. MISSOURI, O. & G. RY. CO. OF TEXAS.

(District Court, E. D. Texas, Sherman-Division.   January 10, 1917.)

No. 121.

1. MASTER AND SERVANT ⊙⟼13—HOURS OF SERVICE ACT—PURPOSE.
   The purpose of Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1415 (Comp. St. 1916, § 8678), forbidding employment of railway employés for more than 16 consecutive hours, was to add to the safety of persons and property being transported in interstate commerce, as well as to the safety of those engaged in such transportation.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14.]

2. MASTER AND SERVANT ⊙⟼13—HOURS OF SERVICE ACT—EXCEPTIONS—UN-
   FORESEEN CAUSE OF DELAY.
   The derailment of another train, not shown to have resulted from the railroad's negligence, which delayed the arrival of the train in charge of the employés in question for more than 16 hours, is a cause not known to the carrier or its agents, which could not have been foreseen, and which relieves the carrier from liability under Hours of Service Act March 4, 1907, § 3 (Comp. St. 1916, § 8679).

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14.]

3. MASTER AND SERVANT ⊙⟼13—HOURS OF SERVICE ACT—UNFORESEEN CAUSE
   —NECESSITY FOR RELIEF.
   Where a wreck, occurring after employés had started their run, delayed them more than 16 hours, the carrier was not required to relieve them at the first convenient stopping place reached after the expiration of the 16-hour period, but could permit them to continue to the end of their run.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14.]

Action by the United States against the Missouri, Oklahoma & Gulf Railway Company of Texas to recover a penalty for a breach of the Railway Hours of Service Act.   On hearing on agreed statement of facts.   Judgment rendered for defendant.

Clarence Merritt, U. S. Atty.; of McKinney, Tex., for the United States.

Head, Dillard, Smith, Maxey & Head, of Sherman Tex., for defendant.

RUSSELL, District Judge.   This case is before me for decision on an agreed statement of facts, the salient features of which are as follows:

The employés of defendant, who are charged in the information to have been required to work in excess of 16 hours, were subject to the law of Congress known as the "Sixteen-Hour Law."   They were the operatives in charge of defendant's train No. 302, which was engaged in transporting freight between Allen, Okl., and Denison, Tex.   The distance between these two terminals, Denison and Allen, is 96 miles, and this constitutes a regular division or run on the defendant's line of railroad.   The employés in question, with train No. 302, went on duty at Allen, Okl., at 3 o'clock p. m., November 15, 1915, and left that terminal at 3:30 p. m. of that day.   They were relieved

of duty at Denison, Tex., at 11:15 a. m. on November 16, 1915, having been on duty a period of more than 16 hours.

The cause of this overtime was the circumstances here stated: At 6:20 p. m. on November 15, 1915, nearly 3 hours after train No. 302 had left Allen, Okl., for Denison, Tex., and while en route, northbound train No. 56 was derailed at the station of Wapanucka, on defendant's railroad. This derailment was of such a character as to completely block the passage of south-bound train No. 302. After the derailment of train No. 56, the defendant exerted every effort to clear its track, so that train No. 302 could proceed on its journey south. The track was cleared at 4 a. m., November 16th, 13 hours after the train crew of 302 went on duty, and 12½ hours after that train left Allen.

It is conceded by the government that the track of the defendant at Wapanucka, where the derailment of train No. 56 occurred, was in an apparently safe condition and that no other wreck or derailment had occurred on the line of defendant's railroad at that place. There was no evidence to show that there was any negligence in the operation of train No. 56. The question presented is: Does the fact that the defendant required and permitted its employés in charge of train No. 302 to remain on duty from 3 o'clock p. m. of November 15, 1915, to 11:15 a. m. of the following day, constitute a violation of the act of March 4, 1907, known as the "Hours of Service Law"?

[1] The law under consideration consists of four sections, but only the second and third sections are necessary to be read in connection with the case here made:

"Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and shall not be required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty." Comp. St. 1916, § 8678.

This section plainly and clearly sets out what railroad companies subject to the act shall not do nor permit to be done. Prior to its enactment there was no limit fixed by law to the length of time which employés might remain on duty. The need of the law was made manifest by the deplorable casualties which were attributable to the fact that men were required to serve in the operations of trains after their mental and physical powers had been taxed beyond the limit of human endurance. The purpose of the law was to add to the safety of persons and property which were being transported in interstate commerce, as well as the safety of those employés who were engaged in such transportation.

[2] It was within the discretion of the law-making body to provide exceptions or not, as Congress might see fit, to the operation of the act, and Congress, as it had the power to do, declared that there should be certain situations to which the law should not apply. Section 3,

after prescribing penalties for the violations of the act, and giving vitality to the agencies of the law relied upon to render more certain and speedy prosecutions thereunder, contains the following language:

"Provided, that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where  *  *  *  delay was the result of a cause not known to the carrier or its officer or agent in charge of such employé at the time said employé left a terminal, and which could not have been foreseen."

The language here used is broad and comprehensive. It is not a mere limitation or restriction on the enforcement of the act, but it excepts absolutely from the operations of the law situations such as are described in the proviso.

, Now, to the facts of this case: Train No. 56 was on its journey north when train No. 302 left the terminal, at Allen, Okl. Train No. 302 left Allen at 3:30 p. m., November 15, 1915. Train No. 56 was derailed at Wapanucka at 6:23 p. m., November 15th, nearly 3 hours after 302 left the terminal. The derailment of 56 delayed 302 at Wapanucka until 4 a. m., November 16th. In the meanwhile the defendant was making every reasonable effort to get its track clear for the passage of train No. 302. I hold that the delay of train No. 302 was the result of a cause not known to the carrier or its officer or agent in charge of its employés on said train at the time said employés left the terminal at Allen, Okl., and which could not have been foreseen. This being so, the act of March 4, 1907, by its express terms did not apply to the operatives of train No. 302.

[3] Counsel for the government insist that it was, at least, the duty of the defendant to tie up the train crew of No. 302 at the first convenient stopping place reached after the expiration of the 16-hour period. But to give the act this construction would be reading into it something it not only does not contain, but something in manifest conflict with the proviso above quoted. In this respect the Hours of Service Law is not similar to the Safety Appliance Act of 1910 (Act April 14, 1910, c. 160, 36 Stat. 298).

In the case here presented the parties have agreed that, on December 24, 1908, the Interstate Commerce Commission promulgated a rule, which was transmitted to the defendant, and was in the following language:

· "Sec. 3. Employés unavoidably delayed, by reason of causes that could not at the commencement of a trip have been foreseen, may lawfully continue on duty to the terminal or end of that run."

As the court views the law, this rule was not necessary, because under the facts and circumstances in evidence the 16-hour law, by its express terms, did not apply to the operatives of train No. 302, and as to those operatives, on the occasion in question, it was just as though Congress had made no law on the subject of hours of service.

For the reasons given, I render judgment for the defendant.